**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | No. _____ |
| Plaintiff, | ) ) | Hon. _____ |
| v. | ) ) ) | Mag. J. _____ |
| AJAX CONSTRUCTION, INC., JASON SCHERENCEL, and GRAND TIMBER LOFTS CONDOMINIUM ASSOCIATION | ) ) ) | |
| Defendants. | | |

**CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY'S
<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>**

Plaintiff Cincinnati Specialty Underwriters Insurance Company ("CSU") brings this action for declaratory judgment against Ajax Construction, Inc. ("Ajax"), Jason Scherencel, and Grand Timber Lofts Condominium Association ("Grand Timber"). In support thereof, CSU states as follows:

1. This is a declaratory judgment action brought pursuant to 28 U.S.C § 2201 and 28 U.S.C. § 1332 to determine the rights and obligations of the parties under a commercial general liability insurance policy.

2. This action will resolve a dispute among Cincinnati, Ajax, and Mr. Scherencel as to whether Ajax and Mr. Scherencel are entitled to coverage under a commercial general liability policy that Cincinnati issued to Ajax, in relation to a lawsuit filed against them by Grand Timber.

1

**PARTIES, JURISDICTION AND VENUE**

3.      Cincinnati Specialty Underwriters Insurance Company is a corporation organized under the laws of Delaware with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, Cincinnati is a citizen of Delaware and Ohio.

4.      Ajax Construction, Inc. is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Ajax Construction, Inc. is a citizen of Illinois.

5.      Jason Scherencel is a resident and citizen of Illinois. For the purposes of 28 U.S.C. § 1332, Jason Scherencel is a citizen of Illinois.

6.      Grand Timber Lofts Condominium Association is a not-for-profit corporation organized under the laws of Illinois with its principal place of business at 500 N. Damen Avenue in Chicago, Illinois. For the purposes of 28 U.S.C. § 1332, Grand Timber Lofts Condominium Association is a citizen of Illinois.

7.      According to filings on the Illinois Secretary of State website, Ajax was involuntarily dissolved on August 10, 2018. Jason Scherencel was the President of Ajax.

8.      Grand Timber filed a lawsuit against Ajax and "Jason Scherencel, individually and D/B/A Ajax Construction" seeking damages with respect to construction work at the Grand Timber property at 500 N. Damen, Chicago, Illinois (the "Property").

9.      The Grand Timber lawsuit seeks damages of $489,415 in damages, plus prejudgment interest, attorney's fees, and costs. The exposure to Cincinnati, including the cost of defending Ajax and Mr. Scherencel and the damages sought from Ajax and Mr. Scherencel, exceeds $75,000.00.

10. Jurisdiction for this matter is secure under 28 U.S.C. § 1332. The parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2). The insurance policy at issue was issued to Ajax in Illinois, the underlying dispute relates to contracts for work to be done in Chicago, Illinois, and the underlying lawsuit filed by Grand Timber is pending in the Circuit Court of Cook County, Illinois.

## BACKGROUND

**A.  Underlying Suit**

12. This insurance coverage dispute arises out of a breach of contract lawsuit filed by Grand Timber against Ajax and Jason Scherencel. The underlying suit is captioned as *The Grand Timber Lofts Condominium Association v. Ajax Construction, Inc., and Jason Scherencel, individually and d/b/a Ajax Construction,* case 2019 L 008527 (Circuit Court of Cook County) ("the Grand Timber lawsuit"). (A copy of the Grand Timber Complaint, including exhibits thereto, is attached as **Exhibit 1**.)

13. The Grand Timber Complaint alleges that Ajax and Grand Timber contracted in August 2017 for Ajax to perform exterior wall renovations at the Property, as itemized in the Written Proposal (the "Contract"). (Exhibit 1, ¶¶ 5-9.) The Contract is attached as Exhibit A to the Grand Timber Complaint.

14. The Grand Timber Complaint alleges that Ajax prepared and executed an express written warranty for its work at the Property (the "Warranty"). (Exhibit 1, ¶¶ 10-13.) The Warranty is attached as Exhibit B to the Grand Timber Complaint.

15. The Grand Timber Complaint alleges that Grand Timber paid Ajax $407,100 to perform the work set forth in the Contract. (Exhibit 1, ¶¶ 8, 14.)

16. The Grand Timber Complaint alleges that Ajax began the work set forth in the Contract in November 2017 and represented that its work pursuant to the Contract would be substantially completed by November 20, 2017. (Exhibit 1, ¶¶ 15-16.)

17. The Grand Timber Complaint alleges that Ajax and Jason Scherencel failed to perform and complete the work as itemized in the Contract, or to honor the obligations in the Warranty. (Exhibit 1, Count 1 ¶¶17-18; Count 2 ¶¶28-30; Count 6 ¶¶17-18; Count 7 ¶¶28-30.)

18. The Grand Timber Complaint alleges that Grand Timber sent correspondence to Ajax and Mr. Scherencel on August 10, 2018, October 20, 2018, and March 21, 2019, and otherwise contacted Ajax and Mr. Scherencel, demanding that they repair and complete the work identified in the Contract. (Exhibit 1, Count 1 ¶¶ 19-23; Count 6 ¶¶ 19-23.)

19. The Grand Timber Complaint alleges that Ajax and Mr. Scherencel "ignored [Grand Timber's] communications regarding the deficient and incomplete work at the Property," "ignored [Grand Timber's] demands for it to honor the promises contained in the Warranty," and "refused to repair and/or replace the defective materials and labor it provided at the Property." (Exhibit 1 ¶ 23, Count 2 ¶¶24-30; Count 7 ¶¶24-30.)

20. The Grand Timber Complaint alleges that Ajax and Mr. Scherencel had no intention to ever honor their express, written warranty, in violation of the Illinois Consumer Fraud Act. (Exhibit 1, Count 5 ¶¶ 41-48; Count 10 ¶¶ 41-48).

21. The Grand Timber Complaint alleges that due to the failure or refusal of Ajax and Mr. Scherencel to complete the work as required under the Contract or to repair/replace their deficient work under the Warranty, Grand Timber was damaged "in an amount not less than $489,415.00." Every count of the Grand Timber Complaint seeks that same amount of $489,415 in damages from Ajax or Mr. Scherencel, plus prejudgment interest, attorney's fees, and costs.

22. In each paragraph alleging damages, the Grand Timber Complaint specifically cites Exhibit F to the Grand Timber Complaint. That document is a May 2, 2019 proposal from Lupo Masonry Restoration, Inc. ("Lupo Masonry"), quoting $489,415.00 to perform/repair the work that Ajax had been hired to do. (Exhibit 1, Count 1 ¶ 24; Count 2 ¶ 31; Count 3 ¶ 30; Count 4 ¶40; Count 5 ¶ 49; Count 6 ¶ 24; Count 7 ¶ 31; Count 8 ¶ 30; Count 9 ¶40; Count 10 ¶ 49) (attaching and citing the May 2, 2019 proposal from Lupo Masonry, Exhibit F to the Grand Timber Complaint.)

23. The damages alleged in the Grand Timber Complaint ($489,415.00) match exactly the cost proposal sent by Lupo Masonry in May 2019 to repair and complete the work that Ajax should have done. (Exhibit F to the Grand Timber Complaint.)

24. Counts 1-5 of the Grand Timber Complaint are asserted against Ajax, seeking damages under theories of breach of contract, breach of express warranty, breach of implied warranty, Magnuson Moss violations, and consumer fraud. (Exhibit A pp. 4-10). Counts 6-10 of the Grand Timber Complaint assert the same claims against Jason Scherencel "individually and d/b/a Ajax Construction." (Exhibit 1, pp. 10-16).

5

**B.     CSU's Coverage Dispute with Ajax**

25.     On March 21, 2019, counsel for Grand Timber sent a "Notice of Claim" to the insurance agent for Ajax, stating that it intended to pursue a claim against Ajax for failing to complete the work it had contracted to do. Grand Timber's March 21, 2019 letter states: "In the plainest terms, Ajax failed to provide the services for which it was paid. Ajax's work was substandard, did not meet minimum requirements for construction, and failed to perform the services in a workmanlike manner." (A true and correct copy of that March 21, 2019 letter is attached as **Exhibit 2**).

26.     On April 23 and April 30, 2019, CSU sent correspondence to Ajax advising that CSU was investigating Grand Timber's claim under reservation of rights, and identifying certain policy exclusions that could bar coverage for that claim. (True and correct copies of the April 23 and April 30, 2019 letters to Ajax are attached together as **Exhibit 3**).

27.     On or around September 11, 2019, CSU received notice that Grand Timber had filed a lawsuit against Ajax. (A true and correct copy of the September 11, 2019 email from Grand Timber's counsel is attached as **Exhibit 4**).

28.     On October 3, 2019, CSU sent a letter to Ajax explaining why the policy issued by CSU provided no coverage for the Grand Timber Lawsuit. The letter gave Ajax until October 18, 2019 to withdraw any claim for coverage or provide an explanation of why they disagreed with CSU's coverage conclusion. (A true and correct copy of the October 3, 2019 letter is attached as **Exhibit 5**). CSU received no response to this letter.

29.     CSU sent follow up correspondence to Ajax on November 12, 2019. (A copy of the November 12, 2019 letter is attached as **Exhibit 6**). The letter reiterated CSU's

denial of coverage for the Grand Timber lawsuit and again requested that Ajax withdraw its claim for coverage or provide an explanation of why it disagreed with CSU's coverage conclusion. Again CSU received no response to its letter.

30. CSU sent a third letter to Ajax on December 17, 2019 after Ajax had finally been served with the Grand Timber Complaint. CSU asked for Ajax to respond by December 31, 2019. (A copy of the December 17, 2019 letter is attached as **Exhibit 7**).

31. On January 3, 2020, counsel for Ajax asked CSU for an additional 30 days to respond to CSU's coverage position. On January 31, 2020, counsel for Ajax offered to enter into a tolling agreement with CSU so that it would have time to review the coverage issues. (A copy of those January 2020 emails is attached as **Exhibit 8**).

32. On February 12, 2020, counsel for Ajax requested CSU to reconsider its coverage position and told CSU that Ajax no longer was interested in a tolling agreement. Until February 12, 2020, CSU had never received any response to its coverage position and did not know whether Ajax would agree that the CSU policy provided no coverage for Grand Timber's claims.

**C.** **The CSU Policy Issued to Ajax**

33. CSU issued Policy No. CSU0100097 to Ajax with effective dates of June 15, 2017 through June 15, 2018 (the "Policy"). (A copy of the Policy is attached as **Exhibit 9**.) CSU did not insure Ajax at any time after June 15, 2018.

34. Mr. Scherencel is not specifically named as an insured under the Policy. As President of Ajax, he would qualify as an "insured" only with respect to his duties in that role. (Form CG 00 01 04 13, Exhibit 9 at CSU00027).

35. The Policy contains, in relevant part, the following provisions:

7

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1. *Insuring Agreement*
   a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply. . . .*
   b. *This insurance applies to … "property damage" only if:*
      (1) *The … "property damage" is caused by an "occurrence" …;*
      (2) *The … "property damage" occurs during the policy period …*

(Form CG 00 01 04 13, Exhibit 9 at CSU00018).

36. The Policy defines "property damage" to mean "*physical injury to tangible property*" or "*loss of use of tangible property that is not physically injured.*" (Form CG 00 01 04 13, Exhibit 9 at CSU00033).

37. The Policy defines "occurrence" to mean "*an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*" (Form CG 00 01 04 13, Exhibit 9 at CSU00032).

38. The Policy contains a number of exclusions, including the following:

*This insurance does not apply to:*

\* \* \*

j. *Damage to Property*

\* \* \*

(5) *That particular part of real property on which you or any subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*
(6) *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

\* \* \*

k. *Damage to Your Product*

*"Property damage" to "your product" arising out of it or any part of it.*

8

  l. *Damage to Your Work*

  *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

      \*  \*  \*

  m. *Damage to Impaired Property or Property Not Physically Injured*

  *"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

   (1) *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
   (2) *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

      \*  \*  \*

  n. *Recall of Products, Work or Impaired Property*

  *Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

   (1) *"Your product";*
   (2) *"Your work"; or*
   (3) *"Impaired property";*

  *if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

  39. The Policy contains the *Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") Exclusion* which states, in relevant part:

  a. *This insurance does not apply to … "property damage" …that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:*

   (1) *The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or*

9

> *replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or*
>
> *(2) Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture … regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.*

(Form CSGA 343 03 08, Exhibit 9 at CSU00061).

40. The Policy contains a Breach of Contract exclusion which states:

> *This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract.*

(Form CSGA 402 05 16, Exhibit 9 at CSU00040).

### COUNT I
### AJAX IS NOT ENTITLED TO COVERAGE FOR THE GRAND TIMBER LAWSUIT BECAUSE THE REQUIREMENTS OF THE INSURING AGREEMENT HAVE NOT BEEN MET

41. CSU incorporates and re-alleges paragraphs 1-40 as if fully set forth herein.

42. The Grand Timber Complaint alleges that Ajax is liable for the costs of paying another contractor to perform or repair the work that Ajax failed to complete.

43. The costs that were (or may in the future be) incurred by Grand Timber to hire replacement contractors are purely economic damages and do not qualify as "property damage" under the Policy. CSU does not owe coverage for any alleged loss or "damage" that does not qualify as "property damage" under the Policy.

44. The Grand Timber Complaint does not allege any "property damage" as defined by the Policy consisting of (a) physical injury to tangible property or (b) loss of

10

use of tangible property that was not physically injured, as a result of acts or omissions by Ajax.

45. The Policy provides coverage for "property damage" only if it was caused by an "occurrence," which is defined as an "*accident*." (Form CG 00 01 04 13, Exhibit 9 at CSU00032).

46. The Grand Timber Complaint alleges that Ajax failed to perform its work as required under the Contract; refused to respond to repeated demands for completion; and deliberately decided not to honor the obligations under its own written Warranty. These alleged acts or omissions were not an "accident." Any damages resulting from these alleged acts or omissions were not caused by an "occurrence," and thus are not covered by the Policy.

47. The Grand Timber Complaint does not allege any "property damage" caused by an "occurrence" during the CSU policy period, while the Policy was still in effect. The Policy was no longer in effect after June 15, 20018, and CSU owes no coverage for any damage that took place after CSU no longer insured Ajax.

48. As the Grand Timber Complaint does not meet the requirements of the Insuring Agreement under the Policy, CSU does not owe coverage (defense or indemnity) to Ajax or Jason Scherencel for the Grand Timber Lawsuit.

### COUNT II
### AJAX IS NOT ENTITLED TO COVERAGE FOR THE GRAND TIMBER LAWSUIT BECAUSE ONE OR MORE OF THE POLICY EXCLUSIONS APPLY TO BAR COVERAGE

49. CSU incorporates and realleges paragraphs 1-48 as if fully set forth herein.

50. The following exclusions apply to the extent Grand Timber alleged any "property damage" during the policy period which was caused by an "occurrence," all of which CSU denies.

51. The Grand Timber Complaint alleges that Ajax failed to provide the services for which it was paid; failed to perform as required under the Contract; and failed to perform under its written Warranty by which it had agreed to repair or replace its defective materials and labor provided at the Property.

52. The Policy excludes coverage for any alleged "property damage" "*arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract.*" (Form CSGA 402 05 16, Exhibit 9 at CSU00040).

53. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that the claims asserted by Grand Timber are based on any breach of contract, including but not limited to breach of any express or implied warranty.

54. Exclusion j(5) in the Policy states that coverage does not apply to:

> j. *Damage to Property*
> \* \* \*
> *(5) That particular part of real property on which you or any subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

55. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion j(5) applies to the claims asserted by Grand Timber.

56. Exclusion j(6) in the Policy states that coverage does not apply to:

> j. *Damage to Property*
> \* \* \*

> (6) *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

57. The Policy defines "your work" to mean:

> (1) *Work or operations performed by you or on your behalf; and*
> (2) *Materials, parts or equipment furnished in connection with such work or operations.*

"Your work" also is defined to include:

> (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
> (2) *The providing of or failure to provide warnings or instructions.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00034).

58. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion j(6) applies to the claims asserted by Grand Timber.

59. Exclusion k in the Policy states that coverage does not apply to:

> k. *Damage to Your Product*
>
> *"Property damage" to "your product" arising out of it or any part of it.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

60. The Policy defines "your product" to mean:

> (1) *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
> (a) *You … [and]*
> (2) *Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

"Your product" is also defined to include:

> (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*
> (2) *The providing of or failure to provide warnings or instructions.*

13

(Form CG 00 01 04 13, Exhibit 9 at CSU00033-4).

61. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion k applies to the claims asserted by Grand Timber.

62. Exclusion l in the Policy states that coverage does not apply to:

> l. *Damage to Your Work*
>
> *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

63. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion l applies to the claims asserted by Grand Timber.

64. Exclusion m in the Policy states that coverage does not apply to:

> m. *Damage to Impaired Property or Property Not Physically Injured*
>
> *"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*
>
> *(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
> *(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*
>
> \* \* \*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

65. The Policy defines "impaired property" to mean tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> a. *It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*
> b. *You have failed to fulfill the terms of a contract or agreement;*
>
> *if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00031).

66. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion m applies to the claims asserted by Grand Timber.

67. Exclusion n in the Policy states that coverage does not apply to:

> n. *Recall of Products, Work or Impaired Property*
>
> *Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*
>
> *(1) "Your product";*
> *(2) "Your work"; or*
> *(3) "Impaired property";*
>
> *if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

(Form CG 00 01 04 13, Exhibit 9 at CSU00022).

68. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that Exclusion n applies to the claims asserted by Grand Timber.

69. The Policy contains the *Exterior Insulation and Finish Systems ("EIFS") and Direct-Applied Exterior Finish Systems ("DEFS") Exclusion* which states, in relevant part:

> a. *This insurance does not apply to … "property damage" …that arises out of, is caused by, or is attributable to, whether in whole or in part, any of the following:*
>
> *(1) The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or*
>
> *(2) Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a structure to which a "wall finish system" attaches that results, directly or indirectly, in the intrusion of water or moisture …*

15

> *regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.*

(Form CSGA 343 03 08, Exhibit 9 at CSU00061).

70. Coverage (defense or indemnity) for the Grand Timber Complaint is excluded to the extent that the EIFS/DEFS exclusion applies to the claims asserted by Grand Timber.

72. These exclusions, singly or in combination, bar all coverage for the claims asserted against Ajax in the Grand Timber lawsuit.

73. CSU is entitled to a declaration that it has no obligation to provide coverage (defense or indemnity) to Ajax or for liability that is asserted against it in the Grand Timber lawsuit.

## COUNT III
## SCHERENCEL IS NOT ENTITLED TO COVERAGE
## FOR THE GRAND TIMBER LAWSUIT

74. CSU incorporates and realleges paragraphs 1-73 as if fully set forth herein.

75. Jason Scherencel is not entitled to any coverage under the Policy unless he qualifies as an "insured."

76. Jason Scherencel is an "insured" only for acts or omissions in his role as President of Ajax. To the extent the Grand Timber Complaint alleges that Jason Scherencel is liable to it in any other role, coverage is not available under the Policy.

77. There is no coverage for Jason Scherencel for the Grand Timber Complaint for the same reasons that there is no coverage for Ajax: (a) coverage has not been triggered because the requirements of the Insuring Agreement have not been met and (b) one or more policy exclusions apply to bar coverage for the Grand Timber Complaint.

16

78. The exclusions addressed and incorporated in this Count III, singly or in combination, bar all coverage for the damages sought from Jason Scherencel in the Grand Timber lawsuit.

79. CSU is entitled to a declaration that it has no obligation to provide coverage (defense or indemnity) to Jason Scherencel or for liability that is asserted against him in the Grand Timber lawsuit.

WHEREFORE, for the foregoing reasons, CSU moves this Honorable Court for an order declaring that:

1. CSU has no obligation to defend or indemnify Ajax or Jason Scherencel for the Grand Timber lawsuit.

2. Granting CSU such other and further relief that the Court deems just under the circumstances.

Respectfully submitted,

/s/ Hope Nightingale

Hope Nightingale (#06184864)
Mary Beth Canty (#6298286)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
312-781-6614 (Nightingale)
Nightingale@LitchfieldCavo.com
312-781-6629 (Canty)
Canty@LitchfieldCavo.com
312-781-6630 (Fax)