IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-03176 |
| v. | ) ) | Judge Edmond E. Chang |
| AJAX CONSTRUCTION, INC., JASON SCHERENCEL, AND GRAND TIMBER LOFTS CONDOMINIUM ASSOCIATION | ) ) ) ) ) ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | |

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY'S
SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("CSU") states as follows for its Second Amended Complaint for Declaratory Judgment against Ajax Construction, Inc. ("Ajax") and Grand Timber Lofts Condominium Association ("Grand Timber"):

1. This is a declaratory judgment action brought pursuant to 28 U.S.C § 2201 and 28 U.S.C. § 1332 to determine the rights and obligations of the parties under a commercial general liability insurance policy.

2. This action will resolve a dispute among CSU, Grand Timber, and Ajax as to whether Ajax is entitled to coverage under a commercial general liability policy that CSU issued to Ajax, in relation to a lawsuit filed against it by Grand Timber.

**PARTIES, JURISDICTION AND VENUE**

3. The Cincinnati Specialty Underwriters Insurance Company is a corporation organized under the laws of Delaware with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, CSU is a citizen of Delaware and Ohio.

4. Ajax Construction, Inc. is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Ajax Construction, Inc. is a citizen of Illinois.

5. Jason Scherencel is a resident and citizen of Illinois. For the purposes of 28 U.S.C. § 1332, Jason Scherencel is a citizen of Illinois. Mr. Scherencel was previously dismissed from this case without prejudice.

6. Grand Timber Lofts Condominium Association is a not-for-profit corporation organized under the laws of Illinois with its principal place of business at 500 N. Damen Avenue in Chicago, Illinois. For the purposes of 28 U.S.C. § 1332, Grand Timber Lofts Condominium Association is a citizen of Illinois.

7. According to filings on the Illinois Secretary of State website, Ajax was involuntarily dissolved on August 10, 2018. Jason Scherencel was the President of Ajax.

8. Grand Timber filed a lawsuit against Ajax and "Jason Scherencel, individually and D/B/A Ajax Construction" seeking damages with respect to construction work at the Grand Timber property at 500 N. Damen, Chicago, Illinois (the "Property").

9. The Grand Timber lawsuit seeks damages in excess of $75,000, plus prejudgment interest, attorney's fees, and costs. The exposure to CSU, including the cost of defending Ajax and the damages sought from Ajax, exceeds $75,000.00.

10. Jurisdiction for this matter is secure under 28 U.S.C. § 1332. The parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2). The insurance policy at issue was issued to Ajax in Illinois, the underlying dispute relates to contracts for work to be done in Chicago, Illinois, and the underlying lawsuit filed by Grand Timber is pending in the Circuit Court of Cook County, Illinois.

## BACKGROUND

### A. Underlying Suit

12. This insurance coverage dispute arises out of a lawsuit filed by Grand Timber against Ajax. The underlying suit is captioned as *The Grand Timber Lofts Condominium Association v. Ajax Construction, Inc., and Jason Scherencel, individually and d/b/a Ajax Construction,* case 2019 L 008527 (Circuit Court of Cook County) ("the Grand Timber Lawsuit"). (A copy of the original Grand Timber Complaint, including exhibits thereto, is attached as **Exhibit 1**.) On or around August 20, 2020, Grand Timber filed an amended complaint in the Grand Timber Lawsuit. (A copy of the Amended Grand Timber Complaint, including exhibits thereto, is attached as **Exhibit 10**.) On or around January 6, 2021, Grand Timber filed a document entitled "Count 3 of Plaintiff's Amended Complaint at Law" in the Grand Timber Lawsuit. (A copy of Count 3 of Plaintiff's Amended Complaint at Law is attached as **Exhibit 11**.) Count 3 of Plaintiff's Amended Complaint at Law in the Grand Timber Lawsuit realleges paragraphs 1-17 of Grand Timber's Amended Complaint including, by reference, exhibits A-F of the Amended Complaint.

13. Grand Timber alleges that Ajax and Grand Timber contracted in August 2017 for Ajax to perform "exterior wall renovations" at the Property, as itemized in the Written Proposal (the "Contract"). (Exh. 1, ¶¶ 5-9; Exh. 10, ¶¶ 5 – 10; Exh. 11, ¶ 38.) The Contract is attached as Exhibit A to the Grand Timber Complaint and Amended Grand Timber Complaint, and is incorporated by reference in ¶ 38 of Count 3 of Plaintiff's Amended Complaint at Law.

14. Grand Timber alleges that Ajax prepared and executed an express written warranty for its work at the Property (the "Warranty"). (Exh. 1, ¶¶ 10-13; Exh. 10, ¶¶ 11-14; Ex. 11, ¶ 38.) The Warranty is attached as Exhibit B to the Grand Timber Complaint and Amended Grand Timber Complaint, and is incorporated by reference in Count 3 of Plaintiff's Amended Complaint at Law.

15. Grand Timber alleges that it paid Ajax $407,100 to perform the work set forth in the Contract. (Exh. 1, ¶ 8, 14; Exh. 10, ¶15; Exh. 11, ¶ 38.)

16. Grand Timber alleges that Ajax began the work set forth in the Contract in November 2017 and represented that the work itemized in the Contract would be substantially completed by November 20, 2017. (Exh. 1, ¶¶ 15-16; Exh. 10, ¶¶16-17; Exh. 11, ¶ 38.)

17. Grand Timber alleges that Ajax breached the Contract by failing to perform and complete the work as itemized in the Contract, or to honor its contractual obligations under the Warranty. (Exh. 1, ¶¶17-18; Exh. 10, ¶¶18-19, 34). In its new Count 3, Grand Timber alleges that Ajax failed to substantially complete that work. (Exh. 11, ¶ 41.)

18. Grand Timber alleges that it sent correspondence to Ajax on August 10, 2018, October 20, 2018, and March 21, 2019, and otherwise contacted Ajax, demanding

that Ajax repair and complete the work identified in the Contract. (Exh. 1, ¶¶19-22; Exh. 10, ¶¶20-23; Exh. 11, ¶¶ 42-44.). Copies of the August 10, 2018, October 20, 2018, and March 21, 2019 letters are attached to the Grand Timber Complaint and Amended Grand Timber Complaint as Exhibits C, D, and E, and are incorporated by reference in ¶ 38 of Count 3 of Grand Timber's Amended Complaint.

19. Grand Timber alleges that Ajax "ignored [Grand Timber's] communications regarding the deficient and incomplete work at the Property," "ignored [Grand Timber's] demands for it to honor the promises contained in the Warranty," "refused to repair and/or replace the defective materials and labor it provided at the Property." (Exh. 1, ¶¶23, 28; Exh. 10, ¶¶24, 32.) Grand Timber also alleges that Ajax "ignored [Grand Timber's] communications regarding the deficient and incomplete work at the Property. (Exh. 1, ¶¶23, 28; Exh. 10, ¶¶24, 32; Exh. 11, ¶ 46.)

20. Grand Timber alleges that due to the failure or refusal of Ajax to complete the work or to repair/replace its deficient work, Grand Timber was damaged. (Exh. 1, ¶24, 31, 30, 40, 49, 24, 31, 30, 40, 49 *[sic]*; Exh. 10, ¶¶35-36; Exh. 11, ¶ 47.)

21. In each paragraph alleging damages, Grand Timber specifically cites Exhibit F to the Grand Timber Complaint and Amended Complaint. That document is a May 2, 2019 proposal from Lupo Masonry Restoration, Inc. ("Lupo Masonry"), quoting $489,415.00 to perform and/or repair the work that Ajax had been hired to do. (Exh. 1, ¶24, 31, 30, 40, 49, 24, 31, 30, 40, 49 *[sic]*; Exh. 10, ¶¶25, 35; Exh. 11, ¶ 47.)

22. Counts 1-5 of the original Grand Timber Complaint were asserted against Ajax, seeking damages under theories of breach of contract, breach of express warranty, breach of implied warranty, Magnuson Moss violations, and consumer fraud. (Exh. 1 pp.

5

4-10). Counts 6-10 of the original Grand Timber Complaint asserted the same claims against Jason Scherencel "individually and d/b/a Ajax Construction." (Exh. 1, pp. 10-16.)

23. The Amended Grand Timber Complaint alleges two counts, both against Ajax, which Grand Timber titles "Breach of Contract" and "Breach of Express Warranty." (Exh. 10, pp. 3, 5.) Grand Timber's most recent filing purports to add a Count 3 to the Amended Grand Timber Complaint against Ajax, titled "Negligence." (Exh. 11, p. 3.)

**B.    CSU's Coverage Dispute with Ajax**

24. On March 21, 2019, counsel for Grand Timber sent a "Notice of Claim" to the insurance agent for Ajax, stating that it intended to pursue a claim against Ajax for failing to complete the work it had contracted to do. Grand Timber's March 21, 2019 letter states: "In the plainest terms, Ajax failed to provide the services for which it was paid. Ajax's work was substandard, did not meet minimum requirements for construction, and failed to perform the services in a workmanlike manner." (A true and correct copy of that March 21, 2019 letter is attached as **Exhibit 2**.)

25. On April 23 and April 30, 2019, CSU sent correspondence to Ajax advising that CSU was investigating Grand Timber's claim under reservation of rights, and identifying certain policy exclusions that could bar coverage for that claim. (True and correct copies of the April 23 and April 30, 2019 letters to Ajax are attached together as **Exhibit 3**.)

26. On or around September 11, 2019, CSU received notice that Grand Timber had filed a lawsuit against Ajax. (A true and correct copy of the September 11, 2019 email from Grand Timber's counsel is attached as **Exhibit 4**.)

6

27. On October 11, 2019, CSU sent a letter to Ajax and Mr. Scherencel explaining why the policy issued by CSU provided no coverage for the Grand Timber Lawsuit. The letter gave Ajax until October 18, 2019 to withdraw any claim for coverage or provide an explanation of why they disagreed with CSU's coverage conclusion. (A true and correct copy of the October 11, 2019 letter is attached as **Exhibit 5**.) CSU received no response to this letter on or before October 18, 2019.

28. CSU sent follow up correspondence to Ajax on November 12, 2019. (A copy of the November 12, 2019 letter is attached as **Exhibit 6**.) The letter reiterated CSU's denial of coverage for the Grand Timber lawsuit and again requested that Ajax withdraw its claim for coverage or provide an explanation of why it disagreed with CSU's coverage conclusion. CSU requested a response from Ajax by November 26, 2019 but received no response to its letter by that date.

29. CSU sent a third letter to Ajax on December 17, 2019 after Ajax had finally been served with the Grand Timber Complaint. CSU asked for Ajax to respond to CSU's coverage letter by December 31, 2019. (A copy of the December 17, 2019 letter is attached as **Exhibit 7**.)

30. On January 3, 2020, counsel for Ajax asked CSU for an additional 30 days to respond to CSU's coverage position. On January 31, 2020, counsel for Ajax offered to enter into a tolling agreement with CSU so that it would have time to review the coverage issues. (A copy of those January 3 and 31, 2020 emails is attached as **Exhibit 8**.)

31. On February 12, 2020, counsel for Ajax told CSU that Ajax disagreed with CSU's coverage position and told CSU that Ajax found it unnecessary to sign a tolling

agreement. Until February 12, 2020, CSU had never received any substantive response to its coverage position and did not know whether Ajax would agree that the CSU policy provided no coverage for Grand Timber's claims.

**C.     The CSU Policy Issued to Ajax**

32.     CSU issued Policy No. CSU0100097 to Ajax with effective dates of June 15, 2017 through June 15, 2018 (the "Policy"). (A copy of the Policy is attached as **Exhibit 9**.)

33.     The Policy was not renewed after it expired on June 15, 2018 and CSU did not insure Ajax at any time after June 15, 2018.

**COUNT I
AJAX IS NOT ENTITLED TO COVERAGE FOR THE
GRAND TIMBER LAWSUIT FOR DAMAGES INCURRED TO
HIRE A NEW OR DIFFERENT CONTRACTOR**

34.     CSU incorporates and re-alleges paragraphs 1-33 as if fully set forth herein.

35.     Grand Timber alleges that Ajax is liable to Grand Timber for the costs of paying another contractor to perform or repair the work that Ajax failed to complete. In making that claim, Grand Timber specifically relies on the proposal from Lupo Masonry to perform, finish or repair the work that Ajax had been hired to do. (Exh. 1, ¶24, 31, 30, 40, 49, 24, 31, 30, 40, 49 *[sic]*; Exh. 10, ¶¶25, 35; Exh. 11, ¶ 47.)

36.     The Policy contains, in relevant part, the following provisions:

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

> *1.   Insuring Agreement*
> *a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking*

8

> *damages for … "property damage" to which this insurance does not apply. . . .*
> b. *This insurance applies to … "property damage" only if:*
> (1) *The … "property damage" is caused by an "occurrence" …;*
> (2) *The … "property damage" occurs during the policy period …*

(Form CG 00 01 04 13, Exh. 9 at CSU00018.)

37. In relevant part, the Policy defines "property damage" to mean "*physical injury to tangible property*" or "*loss of use of tangible property that is not physically injured.*" (Form CG 00 01 04 13, Exh. 9 at CSU00033.)

38. Costs incurred to pay a new or different contractor for work that was not completed or was completed incorrectly are not "property damage" caused by an "occurrence" as defined by the Policy.

39. CSU does not owe coverage (defense or indemnity) to Ajax for any damages alleged that do not qualify as covered "property damage" under the Policy.

## COUNT II
## AJAX IS NOT ENTITLED TO COVERAGE FOR THE GRAND TIMBER LAWSUIT FOR "PROPERTY DAMAGE" THAT OCCURRED AFTER THE POLICY EXPIRED

40. CSU incorporates and re-alleges paragraphs 1-39 as if fully set forth herein.

41. Grand Timber alleges that Ajax was to complete its work by November 20, 2017. (Exh. 1, ¶15; Exh. 10, ¶16; Exh. 11, ¶ 38.)

42. Grand Timber further alleges that it sent correspondence to Ajax on August 10, 2018, October 20, 2018, and March 21, 2019, and otherwise contacted Ajax, demanding that it complete the work identified in the Contract. (Exh. 1, ¶¶19-22; Exh. 10, ¶¶20-23; Exh. 11, ¶¶ 42-44.) Copies of the August 10, 2018, October 20, 2018, and March 21, 2019 letters are attached to the Grand Timber Complaint and Amended Grand Timber

Complaint as Exhibits C, D, and E, and incorporated by reference into Count 3 of Plaintiff's Amended Complaint at Law.

43. The Policy provides coverage for "property damage" only if it occurred during the Policy period. (Form CG 00 01 04 13, Exh. 9 at CSU00018.) The Policy expired on June 15, 2018. (Exh. 9 at CSU00001.)

44. The Grand Timber Complaint, including its attachments, does not allege that any "property damage" took place on or before June 15, 2018.

45. CSU owes no coverage for any "property damage" which occurred after the Policy expired.

**COUNT III**
**AJAX IS NOT ENTITLED TO COVERAGE FOR ANY**
**"PROPERTY DAMAGE" NOT CAUSED BY AN "OCCURRENCE"**

46. CSU incorporates and re-alleges paragraphs 1-45 as if fully set forth herein.

47. The Policy provides coverage for "property damage" only if it was caused by an "occurrence". (Form CG 00 01 04 13, Exh. 9 at CSU00032.)

48. The Policy defines "occurrence" to mean "*an accident, including continuous or repeated exposure to substantially the same general harmful conditions*." (Form CG 00 01 04 13, Exh. 9 at CSU00032.)

49. Grand Timber alleges that Ajax "ignored [Grand Timber's] communications regarding the deficient and incomplete work at the Property." (Exh. 1, ¶¶23, 28, 30; Exh. 10, ¶24, 34; Exh. 11, ¶ 46.) Grand Timber also alleges that Ajax "ignored [Grand Timber's] demands for it to honor the promises contained in the Warranty," and "refused to repair and/or replace the defective materials and labor it provided at the Property." (Exh. 1, ¶¶23, 28, 30; Exh. 10, ¶24, 34.)

50. To the extent there was any "property damage" at all, Grand Timber has not alleged "property damage" caused by an "occurrence" (a) because any such alleged property damage was caused by Ajax's alleged deliberate refusal to complete the work, rather than by an "accident", even if the damage was to collateral property and (b) to the extent any alleged "property damage" consisted of damage to Ajax's own "work" or "products."

51. CSU owes no coverage for "property damage" that was not caused by an "occurrence."

## COUNT IV
## AJAX IS NOT ENTITLED TO COVERAGE FOR ANY "PROPERTY DAMAGE" ARISING DIRECTLY OR INDIRECTLY FROM A BREACH OF EXPRESS OR IMPLIED CONTRACT

52. CSU incorporates and re-alleges paragraphs 1-51 as if fully set forth herein.

53. The Policy contains a Breach of Contract exclusion which states:

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

*CONTRACTORS – CHANGES TO COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This endorsement modifies insurance provided under the following:*
*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

### *EXCLUSION – BREACH OF CONTRACT*

*This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract.*

(Form CSGA 402 05 16, Exh. 9 at CSU00040.)

54. Grand Timber alleges that Ajax and Grand Timber entered into the Contract under which Ajax agreed to perform exterior wall renovations at Grand Timber's property. (Exh. 1, ¶¶5-9; Exh. 10, ¶¶5-10, 14, 18; Exh. 11, ¶ 38.)

55. Grand Timber alleges that Ajax breached the Contract by failing or refusing to complete the work it agreed to do, causing damage to Grand Timber. (Exh. 1, ¶¶17-18; Exh. 10, ¶¶ 18, 25-26.) Count 3 of Grand Timber's Amended Complaint characterizes that same conduct as "negligent." (Exh. 11).

56. Grand Timber alleges that Ajax prepared and signed an express written warranty for its work at the Property. (Exh. 1, ¶¶10-12; Exh. 10, ¶¶11-13; Exh. 11, ¶ 38.)

57. Grand Timber alleges that Ajax breached the Warranty by failing to comply with its terms, causing damage to Grand Timber. (Exh. 1, ¶¶30-31; Exh. 10, ¶¶35-36.)

58. Both the Contract and the Warranty are "express or implied contracts" within the meaning of the Breach of Contract exclusion.

59. CSU owes no coverage for Grand Timber's claims against Ajax due to the Breach of Contract exclusion, which precludes coverage for all "claims for 'bodily injury' or 'property damage'" that arises directly or indirectly from Ajax's breach of express or implied contract.

**COUNT V**
**AJAX IS NOT ENTITLED TO COVERAGE FOR ANY "PROPERTY DAMAGE" ARISING FROM ITS INCOMPLETE OR INCORRECT WORK**

60. CSU incorporates and re-alleges paragraphs 1-59 as if fully set forth herein.

61. Exclusion **j(5)** of the Policy states that coverage does not apply to:

> *j.  Damage to Property*
>
> *"Property damage" to:*
>
> \* \* \*
>
> *(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations…*

(Form CG 00 01 04 13, Exh. 9 at CSU00022.)

12

Case: 1:20-cv-03176 Document #: 50 Filed: 01/25/21 Page 13 of 17 PageID #:776

62. Exclusion **j(6)** of the Policy states that coverage does not apply to:

> j. Damage to Property
>
> *"Property damage"* to:
>
> \* \* \*
>
> (6) *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

(Form CG 00 01 04 13, Exh. 9 at CSU00022.)

63. The Policy defines "your work" to mean:

> (1) *Work or operations performed by you or on your behalf; and*
> (2) *Materials, parts or equipment furnished in connection with such work or operations.*

"Your work" also is defined to include:

> (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
> (2) *The providing of or failure to provide warnings or instructions.*

(Form CG 00 01 04 13, Exh. 9 at CSU00034.)

64. Grand Timber claimed that, as of August 10, 2018, the work of Ajax at the Property was deficient and remained incomplete. (See, Exh. 1, Exh. C; Exh. 10, Exh. C; Exh. 11, Exh. C.) Count 3, filed in January 2021, alleges that the work remains incomplete "as of this filing." (Exh. 11, ¶ 41).

64. To the extent Grand Timber alleges "property damage" at all, any such "property damage" arose from Ajax's deficient or unfinished work.

65. Grand Timber seeks damages from Ajax for the cost of restoring, repairing or replacing the work that Ajax failed to do or failed to do correctly.

66. CSU owes no coverage for any claim for "property damage" that comes within Exclusions **j(5) or j(6)**.

13

## COUNT VI
## AJAX IS NOT ENTITLED TO COVERAGE FOR
## ANY "PROPERTY DAMAGE" TO ITS COMPLETED WORK

67. CSU incorporates and re-alleges paragraphs 1-66 as if fully set forth herein.

68. Exclusion **l** in the Policy states in relevant part that coverage does not apply to:

> l.  *Damage to Your Work*
>
> *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

(Form CG 00 01 04 13, Exh. 9 at CSU00022.)

69. Grand Timber seeks damages from Ajax for the cost of restoring, repairing or replacing the work that Ajax failed to do correctly.

70. To the extent that Grand Timber alleges damages due to "property damage" that arose out of Ajax's "completed" work (as defined by the Products-Completed Operations Hazard), coverage for such damages is excluded by Exclusion **l**.

71. CSU owes no coverage for any claim of damages due to "property damage" that comes within Exclusion **l**.

## COUNT VII
## AJAX IS NOT ENTITLED TO COVERAGE FOR ANY
## "PROPERTY DAMAGE" TO "IMPAIRED PROPERTY"

72. CSU incorporates and re-alleges paragraphs 1-71 as if fully set forth herein.

73. Exclusion **m** in the Policy states that coverage does not apply to:

> m.  *Damage to Impaired Property or Property Not Physically Injured*
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

> (2) *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*
>
> \* \* \*

(Form CG 00 01 04 13, Exh. 9 at CSU00022.)

74. The Policy defines "impaired property" to mean tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> a. *It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*
> b. *You have failed to fulfill the terms of a contract or agreement;*
>
> *if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.*

(Form CG 00 01 04 13, Exh. 9 at CSU00031.)

75. Grand Timber seeks damages from Ajax for the cost of restoring, repairing or replacing the work that Ajax failed to do or failed to do correctly.

76. To the extent that Grand Timber alleges damages due to (a) "property damage" (b) to "impaired property" (c) that cannot be used or is less useful because Ajax failed to complete the agreed-upon work or to fulfill the terms of the Contract and/or the Warranty, coverage for such damages is excluded by Exclusion **m**.

77. CSU owes no coverage for any claim for "property damage" that comes within Exclusion **m**.

WHEREFORE, for the foregoing reasons, CSU moves this Honorable Court for an order declaring that:

1. CSU had no obligation to defend Ajax for the original Grand Timber Complaint;

2. CSU has no obligation to defend Ajax for the Amended Complaint (including Count 3) in the Grand Timber Lawsuit;

3. CSU has no obligation to indemnify Ajax for the claims asserted by Grand Timber in its lawsuit;

4. Granting CSU such other and further relief that the Court deems just under the circumstances

                THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY

                By: /s/ Hope Nightingale
                     One of its Counsel

Hope Nightingale (#06184864)
Mary Beth Canty (#6298286)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL 60606
312-781-6614 (Nightingale)
Nightingale@LitchfieldCavo.com
312-781-6629 (Canty)
Canty@LitchfieldCavo.com
312-781-6630 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2021, I caused the foregoing **THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY'S SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Hope Nightingale